## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

GRAND RIVER ENTERPRISES
SIX NATIONS, LTD.,

       Plaintiff,

vs.                                                              No. CIV 24-0427 JB/JFR

RAUL TORRES, in his official capacity,
Attorney General of the State of New Mexico,
and STEPHANIE SCHARDIN CLARKE,
in her official capacity as Secretary for the
Taxation and Revenue Department of New
Mexico,

       Defendants.

### MEMORANDUM OPINION AND AMENDED ORDER[1]

**THIS MATTER** comes before the Court on the Defendants' Motion to Dismiss, filed July 12, 2024 (Doc. 9)("MTD"). The Court held a hearing on December 3, 2024. See Clerk's Minutes at 1, filed December 3, 2024 (Doc. 36). The primary issues are: (i) whether the Eleventh Amendment to the United States Constitution bars Plaintiff Grand River Enterprises Six Nations, LTD's claims for money damages against the Defendants, when Grand River Enterprises Six Nations, LTD ("Grand River") sues the Defendants in their official capacities; (ii) whether the Rooker-Feldman[2] doctrine divests the Court of jurisdiction over Grand River's claims, when

---

[1]On March 11, 2025, the Court entered an Order (Doc. 37), granting the Defendants' Motion to Dismiss, filed July 12, 2024 (Doc. 9). See Order at 1. The Court states in the Order that it will "issue . . . a Memorandum Opinion at a later date more fully detailing its rationale for this decision." Order at 1 n.1. This Memorandum Opinion and Amended Order is the promised opinion.

[2]The Rooker-Feldman doctrine derives from two Supreme Court of the United States of America cases, Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). The United States Court of Appeals for the Tenth Circuit holds that the "Rooker-Feldman doctrine prohibits federal suits that amount to appeals of state-court judgments." Bolden v. City of Topeka, 441 F.3d 1129, 1142-43 (10th Cir. 2006).

Grand River allegedly asks the Court to reverse a State court decision, which the Rooker-Feldman doctrine prohibits; and (iii) whether claim preclusion bars Grand River's lawsuit, when Grand River could have, but did not, bring the Constitutional claims it asserts in this case in its earlier State court lawsuit. The Court concludes that: (i) the Eleventh Amended bars Grand River's damages claims; (ii) the Rooker-Feldman doctrine does not apply, because Grand River does not allege that the State court judgment, itself, injures Grand River; and (iii) claim preclusion bars this suit, because Grand River could have brought the Constitutional claims that it asserts in this litigation in the earlier State court lawsuit about the same subject matter. Accordingly, the Court grants the MTD on claim preclusion grounds.

## FACTUAL BACKGROUND[3]

Grand River "is a Canadian tobacco product manufacturer." Complaint ¶ 2, at 2. In this litigation, Grand River has sued the New Mexico Attorney General, "the chief law enforcement officer in the State of New Mexico," and the New Mexico Secretary of Taxation and Revenue ("Secretary"). Complaint ¶¶ 4-5, at 2. "In 2009, New Mexico . . . adopted model legislation known as the Model Escrow Statute," N.M.S.A. §§ 6-4-12 to -13. Complaint ¶ 13, at 3, filed May 3, 2024 (Doc. 1). The Model Escrow Statute, along with the Tobacco Escrow Fund Act, N.M.S.A. §§ 6-4-14 to 6-4-24.2, are designed to enforce a 1998 master settlement agreement between forty-six states and the "four largest" American cigarette manufacturers. Complaint ¶ 10, at 3. The master settlement agreement concluded the "multistate tobacco litigation," in which New Mexico participated. Complaint ¶¶ 10-16, at 3-4.

---

[3]When considering a rule 12(b)(6) motion to dismiss, the Court accepts "'all facts pleaded by the non-moving party as true and grants all reasonable inferences from the pleadings' in that party's favor." Sanders v. Mountain Am. Fed. Credit Union, 689 F.3d 1138, 1141 (10th Cir. 2012)(quoting Park Univ. Enters. Inc. v. Am. Cas. Co., 442 F.3d 1239, 1244 (10th Cir. 2006)).

"The Tobacco Escrow Fund Act requires the Attorney General to maintain a list of manufactures who comply with the New Mexico Tobacco Laws;" this list is referred to as the "Directory."  Complaint ¶ 17, at 4.  "Distributors and retails are prohibited from selling a manufacturer's cigarettes in the State unless the manufacturer and its cigarette brands appear on the Directory."  Complaint ¶ 18, at 4.  "For a manufacturer's brands to be approved and included on the Directory, the manufacturer must execute and deliver an annual certification to the Attorney General."  Complaint ¶ 19, at 4.  After the Attorney General receives the annual certification, "the statute requires the Attorney General to maintain a directory listing the manufacturers in compliance with New Mexico's Tobacco Laws and their product brands that may be sold in the State."  Complaint ¶ 20, at 4.  "In reviewing a manufacturer's annual certification, the statute allows the Attorney General to remove or deny a NPM's[4] Directory certification for five discrete reasons."  Complaint ¶ 21, at 5.

Grand River is a non-participating manufacturer under the New Mexico Tobacco Laws, meaning that it must "make escrow deposits into an escrow account based on the number of cigarettes sold in each state."  Complaint ¶ 11, at 3.  See id. ¶ 24, at 5.  On "November 7, 2016, GRE applied for its listing on the Directory by delivering to the Attorney General a current,

---

[4]The Complaint describes a non-participating manufacturer -- an "NPM" -- as follows:

> Under the Model Escrow Statute, a manufacturer that sells cigarettes in New Mexico must either join the MSA as a Participating Manufacturer and make annual settlement payments under the MSA or remain a Non-Participating Manufacturer ("NPM") and deposit money into a qualified escrow account each year based on the number of "units sold" of the NPM's cigarettes within the State's jurisdiction.

Complaint ¶14, at 3-4.

accurate and complete Tobacco Product Manufacturer Certification for listing in the Directory."

Complaint ¶ 26, at 5.

> Specifically, as an NPM, GRE: (1) certified that it has appointed an agent for service of process and provided notice to the Attorney General; (2) certified that it is in compliance with the Tobacco Escrow Fund Act; and (3) certified that it has established and maintains a qualified escrow fund with the necessary fund information.

Complaint ¶ 27, at 5-6.  "On October 4, 2017, after GRE had filed suit against the Attorney General to force him [to] respond to GRE's application, the Attorney General sent notice to GRE of a Preliminary Denial of Listing on the New Mexico Tobacco Products Directory . . . ."  Complaint ¶ 28, at 6.  "On October 16, 2017, GRE filed a 'Statement of Compliance and Response to Notice of Preliminary Denial of Listing.'"  Complaint ¶ 29, at 6.  "On April 9, 2018, the Attorney General issued a Notice of Final Determination-Denial of Listing on New Mexico Tobacco Products Directory . . . ."  Complaint ¶ 30, at 6.  "As a result of the Attorney General's ban of GRE from the Directory, no wholesaler has purchased any GRE products in New Mexico."  Complaint ¶ 31, at 6.

## PROCEDURAL HISTORY

First, the Court summarizes the MTD.  Then, the Court summarizes the Response and the Reply.  Finally, the Court summarizes the hearing.

**1.    The Motion to Dismiss.**

In their MTD, which the Defendants, the Attorney General of New Mexico and the Secretary for Taxation and Revenue Department of New Mexico, bring under rules 12(b)(1) and 12(b)(6), the Defendants contend that (i) Grand River's "claims are barred by claim preclusion"; (ii) that the Court "should abstain from hearing GRE's claims against the Defendants based on the Rooker-Feldman doctrine"; and (iii) that the Eleventh Amendment to the Constitution of the

United States bars Grand River's claims for money damages against the State of New Mexico. MTD at 1. According to the Defendants, this lawsuit "is a result of GRE's dissatisfaction with the results of its most recent state court lawsuits appealing the Attorney General's denial of their Tobacco Product Manufacturer Certification (Application) seeking listing in the Directory in 2017." MTD at 2. The Defendants explain that, in 2017, Grand River files a lawsuit in "NM state district court against the Attorney General" seeking "declaratory and injunctive relief as well as a writ of mandamus for the Attorney General's failure to respond to GRE['s] application to be listed in the Directory, thereby legally barring GRE from selling cigarettes in NM." MTD at 2-3. The Defendants describe how, after the Attorney General issues "a final determination denying" Grand River "listing in the Directory," Grand River files "an administrative appeal" in State court "raising a variety of issues, including whether the Attorney General violated GRE's constitutional right to due process." MTD at 3. The Defendants state that, eventually, this administrative appeal is consolidated with the first State court case; the trial court in the consolidated case affirms the Attorney General's denial, and Court of Appeals of New Mexico affirms the trial court's judgment. See MTD at 3.

As to the Defendants' first argument, that claim preclusion bars the suit, the Defendants contend that the three elements of claim preclusion are present here: (i) a final judgment on the merits in the earlier action; (ii) the parties in the two suits are in privity; and (iii) the causes of action -- a term of art in the claim preclusion context -- are the same in the two suits. See MTD at 6. The first element, the Defendants argue, is present, because Grand River "fully briefed and argued their claims before both the state district court and the NM Court of [A]ppeals in a case consolidating two complaints." MTD at 7. The second element, the Defendants argue, also is present, because Grand River "is the party against whom preclusion is being raised[,] and the

Plaintiff was identical in the prior, state court proceedings." MTD at 8-9. Finally, the third element, the Defendants argue, is present, because "the occurrence from which" Grand River's "claims arose, the refusal to list" Grand River "in the Directory," is "central to the cause of action analysis." MTD at 10. "[I]t is immaterial," according to the Defendants, "whether the legal basis for the relief sought here may be different than the legal theories Grand River raised in the state court proceedings." MTD at 10.

As to the Defendants' second argument, that Rooker-Feldman divests the Court of jurisdiction over the Plaintiff's claims," the Defendants assert that, "'[w]here a constitutional issue could have been reviewed on direct appeal by the state appellate court, a litigant may not seek to reverse or modify the state court judgment by bringing a constitutional claim under . . . § 1983.'" MTD at 13 (quoting Anderson v. Colorado, 793 F.2d 262, 262 (10th Cir. 1986))(ellipses in MTD, but not in Anderson v. Colorado). According to the Defendants, Rooker-Feldman also bars "cases that are 'inextricably intertwined' with a prior state court judgment"; the question, states the Defendants, is "'whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment," MTD at 13 (quoting District of Columbia Court of Appeals v. Feldman, 460 U.S. at 482 n.16; Garry v. Geils, 82 F.3d 1362, 1365 (7th Cir. 1996)). Here, the Defendants assert that, to rule for Grand River, the Court would have to hold that "the previous state court rulings were erroneous." MTD at 14. Finally, as to the Defendants' third argument -- invoking Eleventh Amendment immunity -- the Defendants maintain that the Eleventh Amendment bars suits against the State for retroactive monetary relief, which is, in part, for what Grand River asks here. See MTD at 16.

    **2.**    **The Response.**

In the Plaintiff's Response to Defendant's Motion to Dismiss, filed August 21, 2024

(Doc. 17)("Response"), Grand River first argues that, as to claim preclusion, this lawsuit's cause of action is not identical to the State court lawsuit's cause of action, because the New Mexico State courts do not review or decide "whether New Mexico Tobacco laws are constitutional nor whether the Defendants' actions violated procedural due process, equal protection or right to association." Response at 10.  Second, Grand River argues that the two lawsuits do not have the same subject matter, because the State court litigation "did not address the constitutionality of the AG's actions." Response at 11.  Third, Grand River argues that the parties in the two lawsuits are not the same, because "the previous litigation did not concern the New Mexico Taxation and Revenue Department, nor its Secretary."  Response at 12.  Fourth, Grand River argues that the Defendants' final determination does not have a preclusive effect.  See Response at 12.

Grand River, next, turns to the Defendants' final two arguments.  As to Rooker-Feldman's applicability, Grand River maintains that it does not allege that the State courts "ruled improperly" and that it does not seek to "overturn those decisions."  Response at 15.  As to the Eleventh Amendment, Grand River contends that "damages in the form of equitable relief may require the expenditure of state funds to promulgate regulations" for the removal or denial of a tobacco manufacturer from the Directory; accordingly, Grand River argues that this prospective relief can proceed, notwithstanding the Eleventh Amendment.  Response at 18.

###    3.    **The Reply**.

In Defendants' Reply In Support of Their Motion to Dismiss, filed September 13, 2024 (Doc. 20)("Reply"), the Defendants note that "New Mexico courts have consistently held that 'res judicata applies not only where a claim was actually litigated in the first action but also where it could have been litigated.'"  Reply at 5 (quoting Apodaca v. AAA Gas Co., 2003-NMCA-085, ¶ 83, 134 N.M. 77, 103, 73 P.3d 215, 241).  The Defendants contend that, because Grand River

did not include its Constitutional claims in the 2017 litigation in State court, claim preclusion bars these new claims, too. See Reply at 6-7. Next, the Defendants argue that, based on the Supreme Court of the United States opinion Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381 (1940), the additional defendant in this federal litigation -- the New Mexico Secretary for Taxation and Revenue -- does not bar claim preclusion's application. See Reply at 7. Finally, as to claim preclusion, the Defendants assert that the State litigation involves the State district court's "original jurisdiction," meaning that the district court "was not precluded from engaging in fact finding and was not limited to the administrative record." Reply at 10. As to Rooker-Feldman, the Defendants state that Grand River cannot secure a federal court ruling allowing it to sell its products in New Mexico unless the Court concludes that the State court rulings are incorrect. See Reply at 11. Finally, as to the Eleventh Amendment, the Defendants contend that Grand River's authorities do not discuss "direct awards of monetary damages," so they are inapposite. Reply at 11.

4. **The Hearing**.

At the hearing, the Defendants argue that claim preclusion is a "broad bar that functions to force a plaintiff to explore all the facts, develop all the theories, and all the remedies in the first instance." Draft Transcript of Hearing at 7:16-19 (taken December 3, 2024)("Tr.")(Simard-Halm).[5] They zero in on the third claim preclusion element -- whether the cause of action is the same -- and they reiterate that the State court exercised both its original and appellate jurisdiction, so Grand River could have brought its Constitutional claims in State court. See Tr. at 8:13-22 (Simard-Halm). According to the Defendants, moreover, the causes of action in the State and

---

[5]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

federal litigation are the same, because the "one purported injury" is the "State's refusal to list Grand River on the tobacco directory." Tr. at 10:11-14 (Simard-Halm). The Defendants also note that the State court gave Grand River the opportunity to amend its complaint, but Grand River did not amend. See Tr. at 12:12-17 (Simard-Halm).

Next, Grand River responds, and maintains that it did not have a full-and-fair opportunity to litigate its claims in State Court, because the original State court lawsuit asks for a review of the State's decision not to list Grand River on the approved-manufacturer Directory. See Tr. at 21:1-4 (West). Grand River also reiterates that including the Secretary as a Defendant in this federal litigation means that the parties are not the same in the two cases, and, that, therefore, claim preclusion does not apply. See Tr. at 24:14-25:1 (West). The Defendants reply that the State court "was acting in its original jurisdiction . . . once the cases were consolidated." Tr. at 27:4-12 (Simard-Halm).

Subsequently, the parties turn to Rooker-Feldman. The Defendants present their arguments from the MTD. See Tr. at 35:1-25 (Simard-Halm). Then, Grand River states that, to rule in its favor, the Court would not have to set aside the State court judgment. See Tr. at 38:1-2 (West). Finally, Grand River states that they can resolve the Eleventh Amendment issues by amending its Complaint. See Tr. at 49:22-50:7 (West).

### LAW REGARDING RULE 12(B)(1) MOTIONS TO DISMISS.

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress." Henry v. Office of Thrift Supervision, 43 F.3d 507, 511 (10th Cir. 1994)(citing Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541, (1986); United States v. Nixon, 418 U.S. 683 (1974); and Tafoya v. U.S. Department of Justice, 748 F.2d 1389, 1390

(10th Cir. 1984)).  A plaintiff generally bears the burden of demonstrating the court's jurisdiction to hear his or her claims.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 104 (1998)("[T]he party invoking federal jurisdiction bears the burden of establishing its existence."). "[Because] federal courts are courts of limited jurisdiction, we presume no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction." United States ex rel. Hafter v. Spectrum Emergency Care, Inc., 190 F.3d 1156, 1160 (10th Cir. 1999).  Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to raise, by motion, the defense of the court's "lack of jurisdiction over the subject matter."  Fed. R. Civ. P. 12(b)(1).  The United States Court of Appeals for the Tenth Circuit has held that motions to dismiss for lack of subject-matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject-matter jurisdiction; or (2) a challenge to the actual facts upon which subject-matter jurisdiction is based." Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002).

> On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a rule 12(b)(6) motion: the court must consider the complaint's allegations to be true.  See Ruiz v. McDonnell, 299 F.3d at 1180; Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981).  But when the attack is aimed at the jurisdictional facts themselves, a district court may not presume the truthfulness of those allegations.  A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).  In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 [summary-judgment] motion.

Alto Eldorado Partners v. City of Santa Fe, No. CIV 08-0175 JB/ACT, 2009 WL 1312856, at *8-9 (D.N.M. March 11, 2009)(Browning, J.)(citations omitted), aff'd on other grounds by 634 F.3d 1170 (10th Cir. 2011).  The Fifth Circuit has stated:

> [T]he trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction -- its very power to hear the case -- there is substantial authority that the trial court is free

to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

Williamson v. Tucker, 645 F.2d 404, 412-13 (5th Cir. 1981)(quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

When making a rule 12(b)(1) motion, a party may go beyond the complaint's allegations to challenge the facts upon which jurisdiction depends and may do so by relying on affidavits or other evidence properly before the court.  See New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995); Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995).  In those instances, a court's reference to evidence outside the pleadings does not necessarily convert the motion to a rule 56 motion for summary judgment.  See Holt v. United States, 46 F.3d at 1003 (citing Wheeler v. Hurdman, 825 F.2d 257, 259 n.5 (10th Cir. 1987)).  Where, however, the court determines that jurisdictional issues raised in a rule 12(b)(1) motion are intertwined with the case's merits, the court should resolve the motion under either rule 12(b)(6) or rule 56.  See Franklin Sav. Corp. v. United States, 180 F.3d 1124, 1129 (10th Cir. 1999); Tippett v. United States, 108 F.3d 1194, 1196 (10th Cir. 1997).  "When deciding whether jurisdiction is intertwined with the merits of a particular dispute, 'the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim.'"  Davis ex rel. Davis v. United States, 343 F.3d 1282, 1296 (10th Cir. 2003)(quoting Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320, 1324 (10th Cir. 2002)).

## LAW REGARDING MOTIONS TO DISMISS UNDER RULE 12(B)(6)

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests

the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994). A court may also consider documents to which the complaint refers, if their adequacy is central to the plaintiffs' claims and their authenticity is unquestioned. See Armstrong v. N.M. Disability Det. Servs., 278 F. Supp. 3d 1193, 1201 n.3 (D.N.M. 2017)(Browning, J.)(concluding that the court properly considered notices attached to the motion and not to the complaint, because the complaint referenced them, their adequacy was central to the plaintiffs' claims, and their authenticity was unquestioned). See also GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997)(Kelly, J.)("[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered . . . .").

A complaint's sufficiency is a question of law, and, when considering a rule 12(b)(6) motion, a court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. at 322 ("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss."); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." (quoting Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006))). At the motion-to-dismiss stage, the court does not weigh the evidence, and "is interested only in whether it has jurisdiction and whether the [p]laintiffs plead a claim to relief that is plausible on its face." Begay v. Pub. Serv. Co. of N.M., 710 F. Supp. 2d 1161, 1199 (D.N.M. 2010)(Browning, J.).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp v. Twombly, 550 U.S. at 555 (citation omitted). See Duncan v. Citibank (S.D.), N.A., No. CIV 06-0246 JB/KBM, 2006 WL 4063021, at *3 (D.N.M. June 30, 2006)(Browning, J.)(dismissing a civil Racketeer Influenced and Corrupt Organizations Act ("RICO") cause of action from a complaint where the complaint alleged a single physical act, and not a pattern of racketeering activity, and a pattern of activity is one of the elements required to state a RICO claim).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted). A court will not construe a plaintiff's pleadings

"so liberally that it becomes his advocate."  Bragg v. Chavez, No. CIV 07-0343 JB/WDS, 2007

WL 5232464, at *25 (D.N.M. Aug. 2, 2007)(Browning, J.).  The Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a
> complaint: if they are so general that they encompass a wide swath of conduct,
> much of it innocent, then the plaintiffs "have not nudged their claims across the
> line from conceivable to plausible."  The allegations must be enough that, if
> assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for
> relief.

Robbins v. Oklahoma, 519 F.3d at 1247 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at

570)(internal citations omitted).  See Gallegos v. Bernalillo Cty. Bd. of Cty. Comm'rs, 278

F. Supp. 3d 1245, 1259 (D.N.M. 2017)(Browning, J.).

 Generally, the sufficiency of a complaint must rest on its contents alone.  See Casanova v.

Ulibarri, 595 F.3d at 1125; Gossett v. Barnhart, 139 F. App'x at 25 ("In ruling on a motion to

dismiss, the district court is limited to the facts pled in the complaint.").  Emphasizing this point,

the Tenth Circuit, in Carter v. Daniels states: "When ruling on a Rule 12(b)(6) motion, the district

court must examine only the plaintiff's complaint.  The district court must determine if the

complaint alone is sufficient to state a claim; the district court cannot review matters outside of the

complaint."  91 F. App'x at 85.  There are three limited exceptions to this general principle:

(i) documents that the complaint incorporates by reference, see Tellabs, Inc. v. Makor Issues &

Rights, Ltd., 551 U.S. at 322; (ii) "documents referred to in the complaint if the documents are

central to the plaintiff's claim and the parties do not dispute the documents' authenticity," Jacobsen

v. Deseret Book Co., 287 F.3d at 941; and (iii) "matters of which a court may take judicial notice,"

Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. at 322.  See Brokers' Choice of Am., Inc.

v. NBC Universal, Inc., 861 F.3d at 1103 (holding that the district court did not err by reviewing

a seminar recording and a television episode on a rule 12(b)(6) motion, which were "attached to

or referenced in the amended complaint," central to the plaintiff's claim, and "undisputed as to their accuracy and authenticity"). "[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record." Van Woudenberg v. Gibson, 211 F.3d 560, 568 (10th Cir. 2000), abrogated on other grounds by McGregor v. Gibson, 248 F.3d 946, 955 (10th Cir. 2001).

In Gee v. Pacheco, 627 F.3d 1178 (10th Cir. 2010), the defendants "supported their motion with numerous documents, and the district court cited portions of those motions in granting the motion." 627 F.3d at 1186. The Tenth Circuit held that "[s]uch reliance was improper" and that, even if "the district court did not err initially in reviewing the materials, the court improperly relied on them to refute Mr. Gee's factual assertions and effectively convert the motion to one for summary judgment." 627 F.3d at 1186-87. In other cases, the Tenth Circuit has emphasized that, "[b]ecause the district court considered facts outside of the complaint . . . it is clear that the district court dismissed the claim under Rule 56(c) and not Rule 12(b)(6)." Nard v. City of Okla. City, 153 F. App'x 529, 534 n.4 (10th Cir. 2005)(unpublished). In Douglas v. Norton, 167 F. App'x 698 (10th Cir. 2006)(unpublished), the Tenth Circuit addressed an untimely filed charge with the Equal Employment Opportunity Commission -- which contains time limitations that the Tenth Circuit analogized to a statute of limitations -- and concluded that, because the requirement is not jurisdictional, the district court should have analyzed the question under rule 12(b)(6), and "because the district court considered evidentiary materials outside of Douglas' complaint, it should have treated Norton's motion as a motion for summary judgment." 167 F. App'x at 704-05.

The Court has previously ruled that, when a plaintiff references and summarizes the defendants' statements in a complaint, the Court cannot rely on documents containing those

statements that the defendants attach in their briefing.  See Mocek v. City of Albuquerque, No. CIV 11-1009 JB/KBM, 2013 WL 312881, at *50-51 (D.N.M. Jan. 14, 2013)(Browning, J.).  The Court reasoned that the statements were neither incorporated by reference nor central to the plaintiff's allegations in the complaint, because the plaintiff cited the statements only to attack the defendant's reliability and truthfulness.  See 2013 WL 312881, at *50-51.  The Court has also previously ruled that, when determining whether to toll a statute of limitations in an action alleging fraud and seeking subrogation from a defendant, the Court may not use interviews and letters attached to a motion to dismiss, which show that a plaintiff was aware of the defendant's alleged fraud before the statutory period expired.  See Great Am. Co. v. Crabtree, No. CIV 11-1129 JB/KBM, 2012 WL 3656500, at *3, *22-23 (D.N.M. Aug. 23, 2012)(Browning, J.)("Crabtree"). The Court in Crabtree determined that the documents did not fall within any of the Tenth Circuit's exceptions to the general rule that a complaint must rest on the sufficiency of its contents alone, as the complaint did not incorporate the documents by reference or refer to the documents.  See 2012 WL 3656500, at *22-23; Mocek v. City of Albuquerque, 2013 WL 312881, at *50 (refusing to consider statements that were not "central to [the plaintiff's] claims").

On the other hand, in a securities class action and as an exception to the general rule, the Court has concluded that the Court may consider a defendant's operating certification, to which plaintiffs refer in their complaint, and which was central to whether the plaintiffs adequately alleged a loss, when ruling on the defendant's motion to dismiss without converting the motion into one for summary judgment.  See Genesee Cty. Emps.' Ret. Sys. v. Thornburg Mortg. Secs. Tr. 2006-3, 825 F. Supp. 2d 1082, 1150-51 (D.N.M. 2011)(Browning, J.).  See also SEC v. Goldstone, 952 F. Supp. 2d 1060, 1217-18 (D.N.M. 2013)(Browning, J.)(considering, on a motion to dismiss, emails referenced in the complaint as "documents referred to in the complaint," which

are "central to the plaintiff's claim" and whose authenticity the plaintiff did not challenge); <u>Mata</u> <u>v. Anderson</u>, 760 F. Supp. 2d 1068, 1101 (D.N.M. 2009)(Browning, J.)(relying on documents outside of the complaint because they were "documents that a court can appropriately view as either part of the public record, or as documents upon which the Complaint relies, and the authenticity of which is not in dispute").

## NEW MEXICO LAW REGARDING CLAIM PRECLUSION

Under New Mexico law, claim preclusion, also known as res judicata, bars re-litigation of "the same claim between the same parties or their privies when the first litigation resulted in a final judgment on the merits." <u>Deflon v. Sawyers</u>, 2006-NMSC-025, ¶ 2, 139 N.M. 637, 639, 137 P.3d 577, 579. "A party asserting . . . claim preclusion must establish that (1) there was a final judgment in an earlier action, (2) the earlier judgment was on the merits, (3) the parties in the two suits are the same, and (4) the cause of action is the same in both suits." <u>Potter v. Pierce</u>, 2015-NMSC-002, ¶ 10, 342 P.3d at 57. Claim preclusion is a broad bar, precluding a party from bringing any claims which were, or which could have been raised, in a prior proceeding finally determined on the merits. <u>See</u> <u>Kirby v. Guardian Life Ins.</u>, 2010-NMSC-014, ¶ 61, 148 N.M. 106, 124, 231 P.3d 87, 105. To determine whether a prior suit precludes a claim in a second suit, New Mexico courts look to: "(i) the relatedness of the facts in time, space origin, or motivation; (ii) whether, taken together, the facts form a convenient unit for trial purposes; and (iii) whether the treatment of the facts as a single unit conforms to the parties' expectations or business understanding or usage." <u>Hartnett v. Papa John's Pizza USA, Inc.</u>, 828 F. Supp. 2d at 1285-86 (citing <u>Bank of Santa Fe v.</u> <u>Marcy Plaza Assocs.</u>, 2002-NMCA-014, 131 N.M. 442, 40 P.3d 442). Additionally, claim preclusion bars a claim only where a party had a "full and fair opportunity to litigate issues arising out of that claim." <u>Kirby v. Guardian Life Ins.</u>, 2010-NMSC-014, ¶ 61, 148 N.M. at 124, 231 P.3d

at 105.  See Bromberg v. Hildebrandt, No. CIV 21-0707 JB/GBW, 2023 WL 3625007, at *25 (D.N.M. Mar. 31, 2023)(Browning, J.)(claim preclusion applies when "[t]he common nucleus of operative facts . . . consists of allegations that Bromberg and Hildebrandt formed a joint venture, that Bromberg bound that joint venture to a contract with Lorenz, and that Bromberg did so without Hildebrandt's knowledge or authority" and the State court "made findings on all of these issues . . . .").

**ANALYSIS**

The Court grants the MTD on the grounds that claim preclusion bars all of Grand River's claims.  Before addressing claim preclusion, the Court addresses the Defendants' jurisdictional arguments and concludes that the Eleventh Amendment bars Grand River's claims against the Defendants for prospective monetary relief.  The Court dismisses without prejudice Grand River's compensatory damages claims, therefore, for lack of jurisdiction.  Then, the Court addresses the Defendants' Rooker-Feldman arguments and concludes that Rooker-Feldman does not apply. Finally, the Court holds that claim preclusion bars this suit in its entirety, because Grand River could have, but did not, raise its federal Constitutional claims in this case in the earlier State court litigation about the same issue -- New Mexico's refusal to list Grand River on the Directory of approved tobacco sellers.  As a result, the Court dismisses Grand River's remaining claims, which ask for prospective injunctive relief, with prejudice.

**I.    THE ELEVENTH AMENDMENT BARS GRAND RIVER'S DAMAGES CLAIMS AGAINST STATE OFFICIALS IN THEIR OFFICIAL CAPACITIES.**

Grand River's prayer for relief asks for "[c]ompensatory damages under 42 U.S.C. § 1983." Complaint at 12.  The Complaint names, however, the Defendants in their official capacities.  See Complaint at 1.  "[T]he Eleventh Amendment bars damages sought against state officials sued in

their official capacity." <u>Russ v. Uppah</u>, 972 F.2d 300, 303 (10th Cir. 1992).  Accordingly, the Eleventh Amendment bars Grand River's § 1983 claims for money damages against the Defendants.  The Court addresses Grand River's remaining claims, which ask for prospective injunctive relief based on alleged Constitutional violations, in the following sections.

## II.    ROOKER-FELDMAN <u>DOES NOT DIVEST THE COURT OF JURISDICTION</u>.

<u>Rooker-Feldman</u> is a jurisdictional doctrine that prevents federal courts from hearing appeals from State-court losers; here, however, <u>Rooker-Feldman</u> does not apply and does not divest the Court of jurisdiction over this case.  Grand River's federal lawsuit challenges the same State action as does Grand River's State court litigation, and, consequently, the Court holds in the Analysis' third section, claim preclusion bars this suit.   That being said, <u>Rooker-Feldman</u>'s requirements  are  not  coextensive  with  claim  preclusion's  requirements: <u>Rooker-Feldman</u> "prohibits federal suits that amount to appeals of state-court judgments."   <u>Bolden v. City of Topeka</u>, 441 F.3d 1129, 1139 (10th Cir. 2006)(Hartz, J.)("<u>Bolden</u>")(cited with approval in <u>Bruce</u>, 57 F.4th at 746).  Because, in this case, Grand River is not appealing the State-court judgment, <u>Rooker-Feldman</u> does not apply.  <u>See</u> <u>Bruce v. City & Cnty. of Denver</u>, 57 F.4th 738, 746 (10th Cir. 2023)("<u>Bruce</u>").

"The <u>Rooker-Feldman</u> doctrine prevents lower federal courts from exercising jurisdiction 'over cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" <u>Bruce</u>, 57 F.4th at 746 (quoting <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 284 (2005)).  <u>Rooker-Feldman</u> is, accordingly, "a firm jurisdictional bar," but this bar "is narrow in scope."  <u>Bruce</u>, 57 F.4th at 746 (citing <u>Lance v. Dennis</u>, 546 U.S. 459, 464 (2006)).  For example, "[w]hen the state-court judgment is not itself at issue, the doctrine

does not prohibit federal suits regarding the same subject matter, or even the same claims, as those presented in the state-court action. The doctrine that governs litigation of the same subject matter" is claim preclusion. Bolden, 441 F.3d at 1139. To put a finer point on Rooker-Feldman's limitations, the Tenth Circuit has explained that Rooker-Feldman does not bar federal claims "'just because" they "could result in a judgment inconsistent with a state-court judgment.'" Bruce, 57 F.4th at 747 (quoting Mayotte v. U.S. Bank Nat'l Ass'n, 880 F.3d 1169, 1174-76 (10th Cir. 2018)). For Rooker-Feldman to apply, therefore, a plaintiff's complaint must, at the very least, make an "allegation concerning the state-court proceedings or judgment." Bolden, 441 F.3d at 1145.

Grand River's claims here do not "rest on any allegation concerning the state-court proceedings or judgment." Bolden, 441 F.3d at 1145. A comparison to Bolden's facts helps demonstrate this point. In Bolden, Bolden, the plaintiff, purchases property in Topeka, Kansas; before he purchases the property, however, and unbeknownst to Bolden, the City of Topeka deems the property "unfit for human habitation" and orders the property to be demolished. 441 F.3d at 1132. Bolden sues in State court for an injunction prohibiting the City of Topeka from tearing down his new acquisition, but the State court denies his request for an injunction. See 441 F.3d at 1132. Subsequently, Bolden sues the City of Topeka, its mayor, and two City of Topeka employees in federal court. See 441 F.3d at 1132. His federal suit asks, among other claims, for a temporary restraining order to prevent the City from demolishing his property. See 441 F.3d at 1132. The Kansas federal district court invokes Rooker-Feldman, dismisses the claims, and, when Bolden files an amended complaint with similar claims, dismisses that complaint, too, on similar grounds. See 441 F.3d at 1132-33.

On appeal, Bolden contends that the district court should not have dismissed his claims under Rooker-Feldman, and the Tenth Circuit agrees with Bolden. See Bolden, 441 F.3d at 1138.

The Honorable Harris Hartz, United States Circuit Judge for the Tenth Circuit, explains that the district court erroneously invokes Rooker-Feldman, because Bolden's "federal suit did not seek to overturn the state-court judgment." Bolden, 441 F.3d at 1138. Judge Hartz states that, while "the allegations underlying [Bolden's] federal-court claims are identical to what they would have been had there been no state-court proceeding[,] none of his claims rests on allegations that the state-court proceedings or judgment violated federal law, or that the judgment itself inflicted an injury." 441 F.3d at 1138 (this District Court's opinion adds brackets). Under these circumstances, Judge Hartz emphasizes that Rooker-Feldman "is inapplicable, regardless of whether a favorable judgment in federal court would be inconsistent with that judgment and would 'den[y] a legal conclusion that [the] state court has reached.'" Bolden, 441 F.3d at 1145 (quoting Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. at 292).

Similarly here, Grand River's Complaint does not allege that the State court judgment violates federal law or "itself" inflicts an injury. Bolden, 441 F.3d at 1138. Each count focuses on a different State action: the Defendants' alleged failure to promulgate rules about the Directory-listing process (Count I); the Attorney General's allegedly improper denial of Grand River's Directory application (Count II); the Attorney General's allegedly improper refusal to allow Grand River to post a bond, and, instead, denying its application outright (Count III); the Attorney General's allegedly unequal treatment of Grand River as compared to other tobacco manufacturers (Count IV); and the Attorney General's alleged violation of Grand River's right to association under the First Amendment. See Complaint ¶¶ 35-85, at 7-11. None of these counts mentions the State court judgment or asserts that the State court judgment has injured Grand River. See Complaint ¶¶ 35-85, at 7-11. In contrast, the Tenth Circuit applies Rooker-Feldman when a plaintiff's complaint "specifically requests a declaratory judgment nullifying various orders of the

[State] probate court." Mann v. Boatright, 477 F.3d 1140, 1147 (10th Cir. 2007). Grand River's Complaint does not mount this direct attack on the State court judgment. Rooker-Feldman, therefore, does not apply.

Despite the absence of a direct attack on the State court judgment in Grand River's Complaint, the Defendants maintain that Rooker-Feldman bars Grand River's claims on the grounds that those claims are "'inextricably intertwined'" with the State court judgment. MTD at 13 (quoting Garry v. Geils, 82 F.3d 1362, 1365 (7th Cir. 1996)). The very next line in the Defendants' MTD, however, sets out the test from Garry v. Geils: "[T]he 'fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment.'" MTD at 13 (quoting Garry v. Geils, 82 F.3d at 1365)(this District Court's opinion adds brackets). That test merely echoes the preceding paragraphs' inquiry. Grand River is careful to bring a separate set of federal Constitutional claims in this litigation. Although these claims are intended to bring about the same result as the State claims -- a court order allowing Grand River to sell its products in New Mexico -- the claims do not challenge the State court's rulings. The claims are not, to use the Defendants' term, inextricably intertwined with the State court judgment. Rooker-Feldman has no room to operate here.

## III.    CLAIM PRECLUSION BARS GRAND RIVER＇S SUIT.

The Eleventh Amendment bars Grand River's damages claims, but claim preclusion bars Grand River's suit in its entirety. Generally speaking, the claim preclusion doctrine "bars a second suit involving the same parties or their privies based on the same cause of action." Roybal v. City of Albuquerque, No. CIV 08–0181 JB/LFG, 2009 WL 1300048, *5 (D.N.M. Feb. 2, 2009)(Browning, J.)("Roybal")(quoting Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5

(1979)).  Specifically, when "a judgment is rendered for a defendant, the plaintiff's claim is extinguished; the judgment acts as a 'bar'."  United States v. Hopkins, 927 F. Supp. 2d 1120, 1166-65 (D.N.M. 2013)(Browning, J.)(quoting Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc., 575 F.2d 530, 535-36 (5th Cir. 1978))(internal quotations have no citation).  Here, the issue is whether the final judgment in the State of New Mexico's favor in Grand River Enterprises Six Nations, LTD v. State of New Mexico ex rel. New Mexico Office of the Attorney General, No. D-101-CV-2017-01060, dated February 15, 2024, County of Santa Fe Court, First Judicial District, State of New Mexico ("Grand River"), bars the Plaintiffs' claims in this case.

As an initial matter, the Full Faith and Credit Act, 28 U.S.C. § 1738, dictates that New Mexico State preclusion law governs a New Mexico State court judgment's effect on subsequent litigation in federal court.  See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293 (2005)("The Full Faith and Credit Act, 28 U.S.C. § 1738, originally enacted in 1790, ch. 11, 1 Stat. 122, requires the federal court to 'give the same preclusive effect to a state-court judgment as another court of that State would give.'")(quoting Parsons Steel, Inc. v. First Ala. Bank, 474 U.S. 518, 523(1986))(citing Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 373 (1996) and Marrese v. American Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380-381 (1985)).  In New Mexico, a defendant raising claim preclusion "must establish that (1) there was a final judgment in an earlier action, (2) the earlier judgment was on the merits, (3) the parties in the two suits are the same," Potter v. Pierce, 2015-NMSC-002, ¶ 10, 342 P.3d 54, 57 ("Potter") -- or, the parties are in privity, see Deflon v. Sawyers, 2006-NMSC-025, ¶ 2, 139 N.M. 637, 639, 137 P.3d 577, 579 -- and "(4) the cause of action is the same in both suits," Potter, 2015-NMSC-002, ¶ 10, 342 P.3d 54 at 57.  Each of these elements is present here.

As to elements one and two, there is a final judgment on the merits in the consolidated

2017 litigation.[6]  See Order on NMRA § 1-074 Appeal at 1 (dated July 3, 2019), filed July 12,

2024 (Doc. 9-2).  As to element three, whether the parties in the two suits are the same, this element

also is present here.  This element requires more explanation, however, because, in this federal

litigation, Grand River has sued an additional State Defendant: the Secretary.

       The general rule is that claim preclusion "applies only if the parties in the instant action

were the same'" or are "in privity."  Deflon v. Sawyers, 2006-NMSC-025, at ¶ 4, 139 N.M. at 640,

137 P.3d at 580 (quoting St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1174 (10th Cir.

1979)).[7]  New Mexico courts apply a "flexible definition of privity" that tracks the Tenth Circuit's

---

[6]At the motion-to-dismiss stage, courts can take judicial notice of "documents and docket materials filed in other courts."  Stan Lee Media, Inc. v. Walt Disney Co., 774 F.3d 1292, 1298 n.2 (10th Cir. 2014).  This authority permits the Court to take judicial notice of the Court of Appeals of New Mexico opinion resolving Grand River's State court appeal, as well as of the State trial court docket entries, without converting the MTD into a motion for summary judgment.

[7]Notably, New Mexico law provides for defensive non-mutual collateral estoppel. Professor Ted Occhialino's treatise on New Mexico civil procedure explains, that, when a defendant in a second suit invokes estoppel against a "plaintiff who lost on the same claim in an earlier suit," Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 329 (1971):

> If a non-party to the first action seeks to use collateral estoppel against a person who was a party or in privity in the first action, due process normally would not be violated.  The party "against whom" the doctrine would be used was a party to the first suit and thus has already had its "day in court" and lost on the issue sought to be precluded.

M.E. Occhialino, Walden's Civil Procedure In New Mexico at 12-43 (2nd ed. 1996)(no citations for quoted material).  See Silva v. State, 745 P.2d 380, 384, 106 N.M. 472, 476, 1987-NMSC-107, ¶ 11 (holding that "the doctrine of defensive collateral estoppel may be applied when a defendant seeks to preclude a plaintiff from relitigating an issue the plaintiff has previously litigated and lost regardless of whether defendant was privy to the prior suit").  The Supreme Court of New Mexico's approval of defensive non-mutual collateral estoppel signals that it would also approve non-mutual claim preclusion.  As the Supreme Court of the United States notes, courts are generally "willing to permit a defendant in a second suit to invoke an estoppel against a plaintiff who lost on the same claim in an earlier suit."  Blonder-Tongue Lab'ys, Inc. v. Univ. of Illinois Found., 402 U.S. 313, 329-30 (1971).

approach.  Deflon v. Sawyers, 2006-NMSC-025, at ¶ 4, 139 N.M. at 640, 137 P.3d at 580 (discussing the Tenth Circuit's standards for privity).  According to the Supreme Court of New Mexico, "'[p]rivity requires, at a minimum, a substantial identity between the issues in controversy and showing that the parties in the two actions are really and substantially in interest the same.'"  Deflon v. Sawyers, 2006-NMSC-025, at ¶ 4, 139 N.M. at 640, 137 P.3d at 580 (quoting St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d at 1174).

The Attorney General and the Secretary have not pointed to New Mexico or Tenth Circuit authority that addresses the exact issue here; nonetheless, the closeness of the relationship between the Attorney General and the Secretary as to the New Mexico tobacco laws justifies allowing the Secretary to invoke claim preclusion to bar Grand River's suit, even though the Secretary is not a party to the 2017 litigation.  The two State-agency-Defendants share overlapping roles and common interests in enforcing New Mexico's tobacco statutes.  See N.M.S.A. § 6-4-23(A); N.M.S.A. § 6-4-22(F).  New Mexico's tobacco laws give the Attorney General and the Secretary both rulemaking authority and enforcement authority.  N.M.S.A. § 6-4-23(A) provides that "[t]he attorney general and the secretary shall promulgate rules to effectuate the purposes of the Tobacco Escrow Fund Act [§§] [6-4-14 to 6-4-24 NMSA 1978].")(Court adds first and second brackets; third brackets in N.M.S.A. § 6-4-23(A)).  Furthermore, N.M.S.A. § 6-4-22(F) assigns enforcement authority to the Taxation and Revenue Department and the Attorney General: both agencies "may seek an injunction to compel compliance with" § 6-4-22's subsection (A) prohibiting unlisted cigarette sales.  N.M.S.A. § 6-4-22(F).  These provisions demonstrate that the Attorney General and the Secretary share joint responsibility for policymaking and enforcement actions in the New Mexico tobacco market.  This joint responsibility provides the legal justification for the Secretary's claim preclusion defense.  See Lenox MacLaren Surgical Corp. v. Medtronic, Inc., 847 F.3d 1221,

1241 n.11 (10th Cir. 2017)("'[C]ourts have applied nonmutual res judicata where there existed a close or significant relationship between defendants in the first action and defendants in the second action who are asserting res judicata against the same plaintiff . . . .'")(quoting 47 Am. Jur. 2d Judgments § 577).

Besides the close statutory relationship between the Secretary and the Attorney General, there is another justification for allowing the Secretary to assert the claim preclusion defense: the similarity of the claims in the State and federal litigation.  See Deflon v. Sawyers, 2006-NMSC-025, at ¶ 4, 139 N.M. at 640, 137 P.3d at 580 ("'Privity requires . . . a substantial identity between the issues in controversy . . . .'")(quoting St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d at 1174).  Grand River's filings indicate that the core grievance in both the State and federal litigation is the same.  According to Grand River, its federal lawsuit "is primarily premised on the Attorney General's . . . Notice of Final Determination-Denial of the Listing on New Mexico Tobacco Products Direction [sic] issued on April 9, 2018 . . . ."  Response at 7.  The 2017 litigation attacks the Attorney General's decision not to list Grand River on the Directory in two ways.  First, before the Attorney General issues its decision, Grand River sues for "equitable relief -- namely, to direct the AGO to list Grand River on the Directory."  Grand River Enters. Six Nations, Ltd. v. New Mexico Off. of Att'y Gen., No. A-1-CA-38344, 2023 WL 2386981, at *1 (N.M. Ct. App. March 7, 2023)(unpublished)(no Pacific Reports citation or open-source citation)("Grand River v. N.M. A.G."), cert. denied sub nom. Grand River Enters. v. New Mexico Att'y Gen., 2023-NMCERT-008, ¶ 4, 547 P.3d 93.  Second, after the Attorney General issues the formal denial, Grand River administratively appeals the denial, and this administrative appeal is consolidated with the earlier equitable action.  See Grand River v. N.M. A.G., 2023 WL 2386981, at *1.  The point is that this federal litigation constitutes Grand River's third legal attack on the State's decision-making.  The

underlying conflict has remained the same and reinforces that claim preclusion is appropriate here, despite Grand River's decision to sue an additional State Defendant.

After the privity analysis, the final claim preclusion requirement is that "the cause of action is the same in both suits." Potter, 2015-NMSC-002, ¶ 10, 342 P.3d 54 at 57. New Mexico, like the Tenth Circuit, adopts the Restatement (Second) of Judgments' transactional approach to determine what "constitutes a single cause of action" for claim preclusion purposes. Potter, 2015-NMSC-002, at ¶ 11, 342 P.3d at 57 (citing Petromanagement Corp. v. Acme-Thomas Joint Venture, 835 F.2d 1329, 1335-36 (10th Cir. 1998) and Three Rivers Land Co. v. Maddoux, 1982-NMSC-111, ¶ 27, 98 N.M. 690, 652 P.2d 240). In the claim preclusion context, the word "claim" -- or, to use Potter's terminology, a "cause of action" -- is a term of art and is not a synonym for a single legal theory of recovery. See Restatement (Second) of Judgments (1982) § 24 cmt. a. Instead, "claim" refers to the "transaction, or series of connected transactions, out of which the action arose." Restatement (Second) of Judgments § 24(1). Section 24 of the Second Restatement takes a "pragmatic" view of what "factual grouping constitutes a 'transaction'"; relevant factors include "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." Restatement (Second) of Judgments § 24(2)(no citation for quoted material). Importantly, "[t]hat a number of different legal theories casting liability on an actor may apply to a given episode does not create multiple transactions and hence multiple claims." Restatement (Second) of Judgments § 24 cmt. c. It follows that § 24's rule about transactions "applies to extinguish" a plaintiff's claim against the defendant in a second action, "even though the plaintiff is prepared in the second action . . . [t]o seek remedies or forms of relief not demanded in the first action." Restatement (Second) of Judgments § 25 (Court adds brackets).

Applying these principles, the Court holds that the judgment against Grand River in its first State court lawsuit bars its claims in this federal lawsuit. As comment e to § 25 of the Second Restatement explains, if a claim "may find support in theories or grounds arising from both state and federal law," a plaintiff who advances only one State or federal theory in a first lawsuit that proceeds to an adverse final judgment "may not maintain a second action in which he tenders the other theory or ground," so long as there is no "jurisdictional obstacle" to advancing the other theory in the first lawsuit. Restatement (Second) of Judgments § 25 cmt. e. This comment encapsulates what is occurring in this federal litigation. Grand River's 2017 State court complaint advances four State law causes of action, three of which ask the State court to order the Attorney General to list Grand River on the Directory.[8] See Complaint for Declaratory and Injunctive Relief, and Petitions For Writs of Mandamus ¶¶ 62-77, at 9-11 (dated April 14, 2017), filed July 12, 2024 (Doc. 9-1)("2017 Complaint"). Listing Grand River on the Directory would allow Grand River to sell its products in New Mexico. See 2017 Complaint ¶ 1, at 1. In 2018, the State court issued an order granting the Attorney General's motion to dismiss. See Order at 1 (dated October 4, 2018), filed September 13, 2024 (Doc. 20-2)("2018 Order"). The 2018 Order observes that Grand River's briefing and oral argument mentions "other potential claims that are not before the Court, such as potential due process claims [and] equal protection claims." 2018 Order at 3 (Court adds brackets). The 2018 Order states that Grand River may file a motion to amend its complaint "asserting additional claims against the Attorney General's Office concerning its 'do not sell' list." 2018 Order at 4 (no citation for quoted material). Importantly, the 2018 Order notes that "the

---

[8]The fourth cause of action is for mandamus relief to force the Attorney General to pay Grand River a remittance stemming from an earlier lawsuit between Grand River and the Attorney General. See 2017 Complaint ¶¶ 78-80, at 11.

Court expresses no opinion" on a future motion to amend that Grand River may bring.  2018 Order at 4.

The facts in both the State and federal litigation are the same.  The cause of action, for claim-preclusion purposes, is also, therefore, the same.  See Restatement (Second) of Judgments § 24(2)(listing the cause-of-action factors as "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations").  "[E]ven though [Grand River] is prepared in the second action . . . [t]o seek remedies or forms of relief not demanded in the first action," § 24's rule about transactions "applies to extinguish" Grand River's claims against the State in this second action. Restatement (Second) of Judgments § 25 (Court adds brackets).  The presence of different legal theories in federal court poses no obstacle to applying claim preclusion here.

One final note: some Tenth Circuit cases frame the claim preclusion requirements slightly differently from the Supreme Court of New Mexico's framing.  The Tenth Circuit has stated that, if there is a final judgment the merits, the identity of the parties is the same, and the cause of action is the same, "res judicata is appropriate unless the party seeking to avoid preclusion did not have a 'full and fair opportunity' to litigate the claim in the prior suit.  MACTEC, Inc. v. Gorelick, 427 F.3d 821, 831 (10th Cir. 2005)(quoting Yapp v. Excel Corp., 186 F.3d 1222, 1226 n.4 (10th Cir. 1999)).  A party may not have a full-and-fair opportunity to litigate when, for example, there is a jurisdictional limitation in the first suit that prevents the party from entertaining "all aspects of a situation that otherwise would constitute a single claim."  Wright & Miller's Federal Practice and Procedure § 4412 (3d ed. 2025).

Grand River had a full-and-fair opportunity to litigate its federal Constitutional claims in the State court litigation. In this case, Grand River brings federal Constitutional claims relating to the Attorney General's refusal to list Grand River on the Directory and to the Attorney General's and the Secretary's alleged failure to promulgate rules regarding denials of Directory listings. See Complaint ¶¶ 35-85, at 7-11. Grand River could have brought these claims in the 2017 State Court case, and the 2018 Order acknowledges this possibility. See 2018 Order at 4. The Court of Appeals of New Mexico, moreover, in resolving Grand River's State appeal, notes that "the relevant district court order in this case indicates that the court was acting under both its appellate and original jurisdictions." Grand River v. N.M. A.G., 2023 WL 2386981, at *2. This statement confirms that, contrary to Grand River's assertions, the 2017 litigation's procedural posture did not prevent Grand River from bringing the federal Constitutional claims it asserts in this lawsuit. In sum, "allowing [Grand River] to bring such closely related -- but legally distinct -- claims" in this second, federal lawsuit "'would allow precisely the sort of piecemeal litigation, unnecessary expense, and waste of judicial resources'" that New Mexico's claim preclusion doctrine "'is designed to prevent.'" N.M. Consol. Constr., LLC v. City Council of the City of Santa Fe, 97 F. Supp. 3d 1287, 1320 (D.N.M. 2015)(Browning, J.)(quoting King v. Union Oil Co. of Cal., 117 F.3d 443, 447 (10th Cir. 1997))(the Browning Court adds the brackets). Claim preclusion's requirements are present here, and claim preclusion bars Grand River's suit in this case.

**IT IS ORDERED** that: (i) the Defendants' Motion to Dismiss, filed July 12, 2024 (Doc. 9), is granted; (ii) the Plaintiff's claims against the Defendants for damages are dismissed without prejudice; (iii) the Plaintiff's claims against the Defendants for injunctive relief are dismissed with prejudice; and (iv) a separate Final Judgment will be entered.

UNITED STATES DISTRICT JUDGE

Counsel:

Christina S. West
Jesse D. Heibel
Barnhouse Keegan Solimon & West, L.L.P.
Los Ranchos de Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Raúl Torrez
  New Mexico Attorney General
Astrid Carrete
  Assistant Attorney General
New Mexico Department of Justice
Albuquerque, New Mexico

--and--

Julie Sakura
Malina Simard-Halm
  Assistant Attorneys General
New Mexico Department of Justice
Santa Fe, New Mexico

    *Attorneys for the Defendants*